This case is number 260238 Warnock Engineering v. Canton Municipal Utilities. We'll hear first from Mr. McCraney. Thank you, Your Honor. May it please the court. My client, Rudy Warnock, doing business to his firm, Warnock Engineering LLC, was engaged for a period of time as the engineer for Canton Public Utility Commission within the city of Canton, Madison County, Mississippi. This relationship ended when a majority of the commission, three of the five members, voted to oust Warnock for what we contend are bogus reasons, and that occurred on December 22, 2016. At the time of the ouster, there were substantial engineering services which had been performed by Warnock but not paid for by CMU. The two primary issues in this case and on appeal are number one, why was Warnock ousted, and number two, regardless of the reason for the ouster, whether CMU is liable to Warnock under contractual principles for services rendered. As to the first issue, Warnock alleges in his complaint that the ouster was motivated by his refusal to participate in a kickback scheme solicited by CMU Commissioner Cleveland Anderson and for alerting other public officials in Canton, including other CMU commissioners, about Anderson's corrupt behavior. As the record reflects, that alert was sent via text message dated December 17, 2016. That's at record 5040-43. That was just a few days, I think five days, before the special call board meeting occurred, during which meeting Warnock was ousted by a vote of three of the five members. It should be emphasized that two of the members voted against it. The three members voting for included Anderson, Cleotha Williams, and Lanny Slaughter. Anderson essentially admitted in the text message itself that he solicited a $200,000 kickback from Warnock, but he tried to spin it in the text message as if it was some sort of double cross where he was, quote, testing Warnock's loyalty and was also corroborated by the affidavit submitted in the record, and that's at 5102 by Canton Alderman Eric Gilkey, who corroborated that he too had been approached by Anderson regarding this, what we contend is an illegal kickback scheme. Warnock contends that the record supports a claim that CMU as an official governing body taking official government action through a majority of its members, represented by the three commissioners I've just mentioned, is liable under Section 1983 and Monell for retaliating against Warnock in violation of the First Amendment and his First Amendment right to speak out against public corruption. The district court agreed or assumed that the proof supported all of the essential elements of a 1983 claim except for two. The district court essentially ruled that Warnock had failed to present quote-unquote direct evidence that Anderson's retaliatory animus was shared by the other two commissioners, Williams and Slaughter, who voted with him. We submit respectfully that the record evidence and the inference to be drawn reasonably in favor of Warnock, a finder of fact could conclude otherwise. The specific deposition testimony and evidence that supports that claim is on page 15 of our brief where an excerpt from Anderson's testimony is set out where I asked him in his deposition, is it true that you made a motion to terminate Mr. Warnock's contracts because he would not go with the scheme to add $200,000 to a project for your benefit? And the answer he gave was I don't recall. I followed up with a question, well you would recall whether or not that's true or not, wouldn't you? The answer he gave, I don't recall. That's at record 50-60. When he was asked in his deposition whether he had talked to the other two commissioners who a plan to terminate Warnock just a few days later during a special call meeting, Anderson did not deny that such discussions occurred. He simply repeated a refrain which I believe he said maybe 38 different times in his deposition was I don't recall. That's at record 50-57. Mr. McCraney? Yes, your honor. Let's assume that there's this I don't recall business is sufficient to raise a question of retaliation. Isn't the city also entitled to say that there were legitimate reasons that it's not a but-for cause of the termination of Warnock's services? Well that was the alternative finding that the district court made which was that and I believe what you're alluding to is the concept that it would have made the same decision anyway but for about that and the why is there a question of fact since your client admitted that he was attending various committee meetings that he had no obvious right to attend. He admitted that he was interfering with the employment of some people in the utilities division. He admitted that he was acknowledged that he had done these things. Well he may not have characterized them as inappropriate but he acknowledged in his deposition that he had done these things. He acknowledged that there was disagreements within CMU about his role. However, whether those issues amounted to grounds to terminate him are fact issues and the reason I say that is there's nothing in the minutes. You know the minutes issue looms throughout this case. Nothing in the minutes suggests any issue or problem before this special call meeting concerning Warnock overstepping his bounds or being outside his lane or in any way acting improperly whether there was any issue with his services rendered or the amounts of his invoices. Nothing appears in the minutes. Well how much had he been paid at this point in time by the city? Up to the point of termination? Yes sir. I don't know the exact dollar amount but he had submitted a thousand wasn't it? It may have been your honor but he was also moved several million going forward. Well that's what you say. I'm quite shocked that a relatively small subdivision like Canton is paying out such huge amounts of money simply for engineering services. I presume he was not also a contractor is that correct? He was one of the contractors was a water and sewer improvement projects. Had he put any shovels in the ground at the time? He had prepared a bid ready design to essentially rehab the entire city and water and sewer which was a flat fee contract. Okay that was flat fee. What was his ordinary hourly billing rate that the city would have been paying? I don't recall. It's in the contracts your honor. I think it was 150 and the rate varied depending on who was performing the services and of course to perform these services he ramped up hiring a number of employees but these questions are certainly reasonable questions but they're for the jury to decide your honor as to what quantity and quality of his work was. That's exactly the issue that a jury should be deciding. How come you're not saying anything about the alleged threats to rub out the mayor and the journalist at this point? Well that's certainly within the context of the unlawful behavior that and the corrupt behavior that Anderson was engaged in but whether... I have one. Why shouldn't we smell a rat here in regard to this alleged first amendment activity of your client when what he's talking about is very serious potential crimes or attempts or solicitations and he never went to prosecuting authorities? Well he did go to a law enforcement colleague. That was a fellow who was working off the books for him as some kind of security advisor who apparently testified or has an affidavit to the effect that he told Mr. Warnock numerous times that his confiding in him personally was not the same thing as going and making a formal investigative complaint. Well my response to that your honor would be that whether... Another question of fact? Yes your honor that's a question of fact is whether these were legitimate areas of public concern. Of course the district court didn't make a ruling in that regard. No but he had seen a lot of this case by the time he did rule. I'm sorry go ahead go ahead and answer Judge Jones. Thank you your honor. Now I was just going to say the two issues that the district court ruled on was whether Anderson's retaliatory animus could be attributed to the other board members. We submit that's a fact issue because of the timing as well as the deposition testimony that Mr. Williams and Mr. Slaughter gave that they had no idea and no personal knowledge of why they were terminating. They had no issue or problem prior to that special call meeting. They had no personal knowledge of any issue with Mr. Warnock's performance. So it begs the question and it's for the jury to decide why did they vote to fire him and they were the three members of the majority and whether the reasons that were cited none of the three witnesses could tell me where they came up with these reasons that were recited into the record during the special call meeting which was like eight or so very ambiguous statements about Warnock's prior behavior is what they relied on but they couldn't give me any information about where it came from or what they based that information on again. Well Warnock admits all of this that happened so several years after the effect I mean that's not so difficult to conceive that they had forgotten the exact source. Well I disagree that Warnock admitted that these things happened or that they in any way untoward your honor. He admitted facts. He did not admit the adverse characterization. Well let me give you an example. You mentioned the involvement in or at least the allegations been made that he shouldn't have been involved in personnel matters. He was asked to sit on the personnel committee. Now somebody later took issue with the fact that he had been asked to involve himself in his himself in personnel matters but for them to then you try to use that against him that he's exerting undue power over CMU or what have you again that's simply a fact issue for the jury to decide and whatever inference they want to draw from those facts and circumstances once they hear the testimony of the witnesses about that. But you don't but all you what you have is his self-serving testimony that he was invited to sit on the personnel committee. You don't have a testimony from whoever actually placed that invitation. I believe there's record testimony that I believe it's Cleotha Williams or Lanny Slaughter's deposition where they admitted that he was asked to sit on the personnel committee. Counsel are you have a claim that you should have been granted leave to file a fourth amendment file fourth amended complaint or a fifth amended complaint at lost count. What new or altered pleadings did you wish to make that you were deprived of that would or are you not really urging that today? Well no I mean we contend I mean I think to answer that question judge I need to give some background about how this issue arose which was this lawsuit was filed by other counsel in 2017. There was a third amended complaint filed in prior to our involvement March 12, 2018 that was then followed by a motion to dismiss and a motion for summary judgment filed by CMU. The motion to dismiss did not specifically mention any issue about the minutes requirement. This lawsuit had been pending for over a year before that issue was first raised in their summary judgment motion as a grounds to deny any and all payment. In response to the summary judgment motion we pointed out that while technically accurate upon review of the matter having been first raised a year into the litigation that the contracts had issued the three contracts weren't spread on the minutes we pointed out to the district court in our response that should the court and we hotly contested whether the minutes requirement deprived us of an express contractual remedy but we said in the event that the court agrees with CMU that the minutes requirement renders the contracts the written contracts unenforceable we would have an alternative claim for quantum Meroweth under the Mississippi good faith vendor statute that we cited. The district court addressed that claim somewhat in its first summary judgment opinion and because it was suggested in the opinion that the court didn't feel like we had either pled or had a right to plead that claim we within 30 days of that ruling sought leave well we said two things we said we believe that we've adequately pled this under federal or that it had been adequately pled under federal pleading standards particularly rule 8 and 54c that all that would be required to plead that claim is a short and plain statement of the factual basis for the claim. Paragraph 62 of the complaint which is at ROA 3393 specifically says that at the time of the termination Warnock was owed approximately two million dollars. We argued to the district court that that was sufficient from a factual standpoint to assert that claim and that there was no requirement that we cite the statute or quote or set out the words quantum Meroweth in our complaint which are legal theories. What's your best Kate? Well you know if your client had been properly advised from the beginning and by the beginning I mean when he entered this contract with Mr. Weems who according to the city's brief committed suicide and is now deceased had he been properly advised by council they would have made certain that the contract was spread upon the minute. Also since he was a public contractor whoever represented him at the very outset as a competent lawyer and maybe he was not would have pled would have alternatively pled quantum Meroweth. So what's your best case for saying that this very obvious problem in your client's case which was not sought to be corrected until years into litigation amounts to an abuse of discretion when the district court says I've had enough of this because of course the court had gone through how many causes of action already that you would that you would your client had pleaded and then withdrawn six or seven other different causes of you said oh well it's really quantum merit. Well let me first address the point about you said. Why is it an abuse of discretion? Well I need to address the point you made about why the agreements work spread on the minutes. On that point your honor we submitted an affidavit from CMU's former attorney Mike Espy who testified that he personally instructed the city clerk to record those contracts in the minutes and the record evidence is undisputed that neither attorney Espy nor Warnock knew at the time that the city clerk had not done that and had instead on her own volition put them in a desk drawer. That issue did not rear its head until years into this litigation when it was first raised by CMU in its motion for summary judgment. We then sought reconsideration for the court to allow us to pursue this claim and it's important to note that when the court issued its first ruling on summary judgment it extended the discovery period by several months. It extended the trial date until October of 19. There was ample discovery. There was no discovery that did CMU have fair notice that an issue about quantum merit was in the case? Did it have fair notice that there was an issue about the reasonable value of the services were in the case? Well the answer to that has to be of course because long before this came up they had designated two witnesses, two professionals, an accountant and an engineer who prepared 50 page expert reports contesting and nitpicking the value of Warnock services. But the contract didn't exist at this point and the value of the services is measured by reasonableness not by the contract and you're saying you're disputing them because they are taking a position you're taking you continue to of the services. So quite argue more than arguably your position at trial would have to change. No your honor the contracts are certainly evidence of the reasonable value of the services rendered. Now it's not necessarily dispositive and the jury can come to a different conclusion as to what the reasonable value but we cited cases in our brief where the courts have said that although the contract may fail for some legal reason such as in this case the minutes requirement the value that the parties agreed upon can certainly be admitted as relevant evidence for the reasonable value on a quantum merit claim. The best case I can cite to your honor as far as whether we were required to cite the good faith vendor statute is the Johnson case where the U.S. Supreme Court said that you didn't have to plead even cite 1983 to invoke a remedy once a plaintiff says the factual predicate for the claim that is sufficient. That may be sufficient when the plaintiff first files a claim but you're talking about three years into litigation when you're asking for an amendment and a fourth amendment. Well again the only reason we were asking for an amendment was because the court had dismissed our express contract claim which then brought in or brings into focus our right to alternative relief which you wouldn't need to plead. Well that's that was a foreseeable alternative situation. I know you say was that Mr. Espy had told the clerk to do such and such but when you're client was first investigating his cause of action that knowledge about being spread on the minutes is very plain in Mississippi law. I didn't believe it existed until I sat on another case within the past year or two but that's practically a condition precedent to a public contractor making a lawsuit against a public body in Mississippi. The contracts are to be spread on the minutes and again had your client been appropriately represented he should have looked into that immediately it seems to me. Well all I can say is that he and the CMU attorney both believed that that condition precedent had been satisfied. It was not until this issue came up in CMU's motion for summary judgment a year and a half into this litigation that that issue ever surfaced and I respectfully submit good cause existed then and there for us to seek leave to amend for the court to allow us to amend that when again discovery was wide open. There was no trial date. All that would be required is to add the statute in the words quantum merit which again we submit is not even required under federal pleading standards but out of an abundance of to allow us to do that. Now had discovery been closed or trial date imminent this may be a different case but under these circumstances and again the court waited. Okay I'm not being rude you've gotten a lot more than 20 minutes so you've reserved time for rebuttal. Thank you. All right Mr. Blackmon. All right please the court and I'm not going to go back into all the history of how this case came about. I think that's been covered but of course questions at hand with bargaining. Mr. Warnock filed his suit originally and allays a number of grounds supporting his suit. A recall action, a copyright action and as well as well any number of other areas but the copyright action I think has shed some light as to where the plaintiff thought he was going with this. He filed the lawsuit on behalf of himself and also on behalf of his company Warnock Engineering LLC. The suit proceeded along through initially through various motions and it was discovered during discovery that the copyright claim actually was just a copyrighted material, so-called material. In fact the copyright application was not filed until after the lawsuit was actually filed. The owner of their latest copyrighted material was Warnock and Associates, Engineering Associates which is another company owned by Mr. Warnock. That caused a dilemma for Mr. Warnock because during these proceedings it's suddenly done on one set of his lawyers and I forgot which set it was probably the new set that the allegation concerning the copyright claim was dependent on having a proper plaintiff in the case which it was not. In the middle of the argument on the motion of summary judgment Mr. Warnock dissolved that corporation Warnock Engineering and Associates. After it was dissolved it then assigned its claim to Warnock Engineering LLC. Now this was done without any leave in court. It was simply done in the response to the motion of summary judgment. I would call that yet an indeed another unauthorized attempt to amend the pleadings. CMU is a public utility. You have to have their specific requirements with reference to contract. CMU never had a contract with Warnock and Associates Engineering but having realized that problem eventually decided to abandon that claim. Now back to whether or not this was a claim that they originally pled on the basis of a quantum merit. No. No one including the plaintiffs ever considered this a quantum merit claim. The engineering is going on now by claiming that somehow our response and pleadings and the fact that we hired experts somehow put us on notice that somewhere in the background there beyond the original contract claims, beyond the RICO claims, and beyond the copyright claims was somewhere in there buried in the weeds a quantum merit claim because we must have known since we hired experts. But this is what happened and when we filed our original response we reserved the right to amend our pleadings because we saw this plaintiff as a rule 12 most dismissal or a summer judgment. We reserved our right to seek recoupment of the 1.2 million dollars that CMU had paid Mr. Warnock for approximately three weeks of work. The engineers, expert engineers that we hired was simply to tell us whether or not Mr. Warnock's future claim that is that Mr. Warnock had won had added his billing which he which which by the way they admitted to doing and we were going to use that as a possible means to get the money back for our money back on behalf of CMU. Given the amount of discovery that went on in this case is absolutely certain that there was a quantum merit claim lurking somewhere out there in the experts would have been asked to look at that as a possible defense in the case. Now with reference to whether or not there was some conspiracy to get rid of Mr. Warnock by the board now speaking about the board as a whole not just Mr. Anderson there's absolutely no proof of that. The court I think articulated it quite well in his in his ruling. Mr. Warnock was accused well he was dismissed for these reasons. He acted beyond the scope of his capacity as an engineer. He admitted that he served was in the middle of decisions on who to get who to hire and who to get rid of. He admitted that the board dismissed him because his action he agrees insubordinate in a manner in which he interacted with commissioners and aldermen and to say the least he was instructing or directing what people should be moved to different positions within the organization. Mr. Warnock interfered with the day-to-day operations of CMU. What do you say to the argument by opposing counsel that these reasons there's no they seem to all be in lockstep and announced at this meeting on the phone and that there wasn't a history or trace you know tracing back to where these came from that could have been from Mr. Anderson and why doesn't that whether or not Williams and Slaughter actually did receive them and read them why isn't that a fact issue that would also add to that point? Because Mr. Williams and Mr. Williams and Mrs. Slaughter testified that they did not receive them. Right. You got them you didn't but you can check that you know they were sent to them but they say they didn't receive them. Well Mr. Warnock had a lot of opportunity during discovery to produce proof that they were actually sent. Those are screenshots that were that were that were offered into the into the record. There was no one else there were other people allegedly on this on this stream of text messages not a single affidavit no testimony at all from anybody else has said that they received that those text messages or paid any attention that they got. In fact there's no evidence that anybody ever even responded to that text message. None whatsoever. What about the the reasons you were going through the reasons of the termination and I asked you first of all why does that not create a fact issue? Well because a the board the CMU board just like other government entities speaks through their minutes. It does not create a factual issue from any legislative body where you have when you have to vote as a as a by majority in order to enact policies to go behind every person who participated in that deliberative process you're going to get a lot of reasons why they arrived at point a or point b. The issue is and the legal action is is what was the decision that's recorded in the proper records in this case the minutes of the board. Mr. Blackmon was any deposition taken of the other two members who voted against terminating Warnock? No there were no depositions taken of those individuals. It was a board action. It was not an individual action. Well I understand that but I mean they could have said that's it that's very interesting that's all. Well that was not done but even as the court pointed out even if he could cross that threshold of saying that the reason that they I was I was dismissed was because of my protected constitutional first amendment rights and protected rights. The fact is is that through Mr. Warnock's own testimony he corroborates the reasons that were articulated by the board for removing him and one important fact that has not been mentioned here Mr. Warnock on the record which is cited in the brief testified that he participated in the theft of a computer from CMU. It was taken from the property of CMU to his office where he then summoned his IT person to help unlock the computer for the purpose of looking at privileged personnel files. That capsulates the kind of activity that some of the reasons cited by the CMU board for removing him. Now that's testimony for Mr. Warnock himself. He also testified and I think we listed a number of things that that came out during it during discovery. For instance reference to billing. Padding the billing came from one of his own employees. That testimony came from the employee who said Mr. Warnock instructed him to put hours of billing hours in for work that he had not done and it goes on and on in the record. I think the court was right. Our brief cites that they were citing the reasons for dismissing Mr. Warnock were not pretextual. It overcame whatever inference that would be to derive from the fact that he claimed that he had asserted some constitutional right and even further you know I'll just speak back something was mentioned earlier and the earlier argument concerning his report that he made to law enforcement personnel. Now that initially what he said was I reported this to the investigating officer for the district attorney's office which on his face sounds like he was really serious about getting this information out there until we took the gentleman's deposition where he stated no I am his personal security. I've been working for him for eight years and he was paying me off the record in cash. I've told him hundreds of times that no I am not the official depository for this kind of information. You should go to the law enforcement. He told them where you should go he said to make that kind of report. It didn't happen and one of the reasons that may or might not have happened is to go back and examine the real relationship between Mr. Warnock and we cite this in our brief uh Mr. Anderson and Mr. Warnock were friends even after this alleged offer to do commit crimes Mr. Warnock was assisting Mr. Anderson in seeking to find other employment. Also when Mr. Anderson did not show up at his Christmas party he sent him a text wanting to know why he hadn't attended. He also told him that you're family and like family we always take care of family. This is the explains maybe why Mr. Warnock never really seriously sought to do anything if those acts had occurred. He only used it in this lawsuit to now to try to convey uh in his pleadings that he considered these uh this conversation if it was a conversation and if it was a serious conversation he's put into his pleadings but his actions defy that considering his relationship with Ms. Anderson. Mr. Blackmon I'm looking at the demand letter that some counsel for Warnock submitted to the utilities company on January 31 of 2017. So it's right after he was fired and was saying here's how much money you owe me and it lists many different items you know it says date billed, amount billed, amount date paid, amount paid and then outstanding balance which he totals up to over six million. Was there anything in the record as during discovery to underline underlie these invoices? In other words were there time sheets, were there drawings, were there you know indicia uh objective indicia of how much time the engineering company had spent that that supported its bills? Uh yes your honor there was during discovery but what we discovered is that much of the billing was unexplainable uh not just the witness who said that his records were he was not the only witness who said his records were were padded at the request of Mr. Warnock. Other employees testified to that also and I think telling here is that there was not there were zero deliverables for Mr. Warnock and I do mean zero uh even after we got that letter I think the record shows that there was a letter requesting uh that Mr. Warnock provide us with the specifics uh and and support for your your for your for your bills uh and also the product itself. What we got your honor is that during the during the uh litigation uh was uh this copyright material which turned out to be really not copyrighted material it was materials that Mr. Warnock had gotten from CMU itself and also materials that he'd gotten from his previous employer. Well what I'm getting at I suppose is that had the court uh allowed a fourth amended complaint to be filed asserting quantum merit the city would have had to start discovery all over again to assess a reasonable amount of services. And I did have a note really to address that uh when he said that uh it would you know how far we'd gotten in discovery absolutely we would have had then to go back and then uh item by item in an attempt to uh to find whatever uh information we could out about each of those uh those claims especially since he was asking for over six million dollars from a small utility that serves about 10,500 uh citizens uh here in Canton in a five mile radius outside of Canton. Obviously we were a duty bound and obligated to have gone uh further with discovery uh if in fact it's turned out to be finally as he's telling us now a claim for uh for quantum merit. And one point further your honor the court mentioned on that on that question of quantum merit uh when was the first time that you knew that this plaintiff was asserting something that was specifically identified as quantum merit? In the third in in their uh briefing uh uh on the third amendment complaint. So the the complaint though as I understand it was not attached. Not the complaint it is brief. But but the complaint was not attached but there was a brief in support of the amendment is that right? Uh yeah well the complaint was not attached there local rule 15 the court addressed that too. Uh the complaint was not attached to uh the uh uh to the motion. Uh we found out about the quantum merit claim in their response to our motion for summary judge. The second motion was summary judge. Okay now so assuming arguendo I'm sorry go ahead Judge Jones. I just have a quick question. Technically Mr. Blackmon uh you agree that uh it's arguable whether the district court was correct in saying your client uh Warnock was not entitled to quantum merit? It looked to me as if he was a vendor to the city or his company was. Well not under the not under the statute your honor. Uh what the court in the court mentioned the word standing but the statute that Mr. uh Warnock is traveling on actually only applies to vendors uh who are not involved with creating the error or the problems with the contract itself. And obviously it was Mr. Warnock's action that uh that made the contracts illegal. That's according to Mississippi Mississippi law. The statute that he's traveling under uh only applies where there's an innocent vendor. In this case and in this case Mr. Warnock was anything but an innocent vendor. And I think you know without the court having stated so uh the standing issue had to do with whether or not he fit within that particular uh provision in the statute for innocent vendors. Okay okay relatedly though if assuming arguendo that we would construe the prior complaints the live complaints to include uh quantum merit because they state the the services are performed and you were entitled to reasonable pay for them. Just assume that arguendo then what what happens? Because we do have some case law in our circuit that says that uh just stating the content of the claim without labels is adequate. Um so just assume for a minute that we would say it was then what happens? Well if if we I'm trying to see if I understand the first question. What would happen if there was a quantum merit claim? Yes if there had been a quantum merit claim already in the third amendment complaint so there was a need to amend and so um so then what happens? If there had been you know we would we probably this probably would not be an issue. It would have been addressed before and that in lies the problem. Assuming that we said today that there and I'm not saying that we're going to but if we were to say that there was a live quantum merit claim and the district court was wrong in saying that it needed to be amended to make it you know and that it wasn't pleaded then do we have to send it back? That's I guess that's basically my question. Is there any other way to resolve the case without sending it back if if there is a live quantum merit claim? If there is a live uh quantum merit claim we'll start from square one again. If there is. We'd be right we'd back we'd be back at square one. This case has been going on for more than four years uh that would mean that we would have to go back and then begin litigation with reference to that and likely it would end up with a motion for assignment judgment and who knows where it would lead to begin with uh but on the issue whether on the Johnson case that the council cited with reference to pleadings I don't think the under the rules and all this court has completely abandoned the the minimal notice requirement there is for pleadings. Uh I think the language is and in the Johnson case is that uh I think I'm reading and looking at here it says here petitioner stated simply concise and directly events that alleged entitled them to damages. That's what happened in the in the Johnson case. That was not it's not what we have here in our case. The uh Mr. Warnock is relying on one single stated amount in a contract case that he says exclusively elsewhere it's a contract case. He puts in there in the prayer an amount and says now you must know that I'm intending to pursue a quantum merit case. That's not what the rule says and that's not what Johnson says. All right sir um I gave uh Mr. McCraney quite a bit of extra time and sir without taking up too much of the court's time is there anything else you'd like to uh highlight for us? Yeah now when that question is asked in a trial on deposition I always refrain from asking a question that I already uh uh have probably covered anyway. Okay thank you very much. Mr. McCraney rebuttal. Sorry I had to unmute. Thank you your honor. Um first point I'd like to address is uh Mr. Blackman said that uh there's no evidence that anyone any of the public officials in Canton who received or were copied on the the text exchange took any action uh in response to it. The record uh suggests otherwise. We pointed this out on page 14 of our brief where we said that on December 22nd 2016 which was the same day of the special call meeting at CMU there was a meeting of the mayor and board of aldermen in Canton to call a special meeting to remove Cleveland Anderson as a commissioner and stop him or at least attempt to stop him from exerting control over the CMU board. That's at record 5029. The alderman at that meeting and this is also in the record unanimously adopted a resolution stating that exigent circumstances existed to remove Anderson for cause but then the mayor for whatever reason vetoed that resolution. So it's entirely a fact question as to whether action was taken in response to the exigent circumstances that arose by virtue of the text message that went from Mr. Warnock to Canton public officials including Cleotha Williams and Lanny Slaughter and simply a fact question whether they received it and met with or talked to Anderson about these alleged reasons for terminating Warnock that were recited. Mr. Blackman mentioned some issue with a computer that of course is not among the issues no nor mentioned anywhere in the minutes so it's absolutely irrelevant. Mr. Blackman mentioned that had the court allowed a quantum merowick claim or a fourth amendment complaint that discovery would have to be restarted to go through Warnock's invoices and deliverables and so forth and that's just simply not true. The experts that they hired had already performed that work in their expert reports that were done and submitted and briefed on Daubert motions which the court deferred ruling upon all of that work was done. I don't know what possibly they could do more and it's simply for the jury again to decide based on all of the evidence presented what amount if any Warnock is entitled to recover for services rendered. Mr. Blackman also mentioned that Warnock was somehow disqualified as a vendor under the good faith vendor statute because I think he said Warnock caused the illegality and therefore can't be considered innocent vendor. That is simply a fact issue based on the fact that CMU's own attorney was involved in and instructed the city of city clerk to record the contracts on the minutes. No I think he's talking about more than that. Well whatever he's talking about is simply a fact issue for the jury to decide about whether satisfies the and certainly the district court made no finding or ruling as to that issue. That's correct and your time is up and we appreciate arguments for both counsel and we'll look at the case carefully and the court stands in recess. Thank you. Thank you.